IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| JAMES KIMBROUGH, | ) |
| Plaintiff, | ) |
| v. | ) No. 3:13-cv-220 |
| DAVE SEAHORN, | ) Judge Campbell |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff James Kimbrough has filed a *pro se* complaint under 42 U.S.C. § 1983 (ECF No. 1). The complaint is before the Court for an initial review pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and *McGore v. Wrigglesworth*, 114 F.3d 601, 608–09 (6th Cir.1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

### I. FACTUAL ALLEGATIONS

The plaintiff is presently incarcerated at the Lois M. DeBerry Special Needs Facility ("DSNF") in Nashville, Tennessee. He brings suit against defendant Dave Seahorn, who the plaintiff alleges is a physician's assistant employed at the prison and is responsible for providing medical care to inmates at DSNF. The plaintiff asserts that Seahorn has been and remains deliberately indifferent to the plaintiff's serious medical needs in violation of the plaintiff's rights under the Eighth Amendment.

In support of that claim, the plaintiff alleges that he has a mass or "knot" in the deep tissue of his neck on the right side that, according to the plaintiff, "appears to be 'rid[ing]' or connected to his carotid artery." (ECF No. 1, at 10.) The plaintiff admits that the knot has been there for approximately ten years, but he contends that it began significantly affecting his cardiovascular health over the past "couple" of years (*id.*), and that Seahorn is aware of that fact. The plaintiff alleges that Seahorn is "the healthcare official who is ultimately responsible the plaintiff's general health care concerns," and specifically that Seahorn is responsible for making referrals to medical providers and specialists inside and outside the prison, if necessary. (*Id.* at 11.) The plaintiff states that if Seahorn refuses to refer an inmate to a medical doctor or outside specialist, that inmate is not seen by a doctor or specialist, "under any circumstance what-so-ever." (*Id.* at 12.)

The plaintiff alleges that he has been confined at DSNF for the past year and has requested dozens of times to be evaluated by a medical doctor, but that Seahorn refuses to refer him for examination or treatment by a medical doctor. Instead, Seahorn tells the plaintiff (or relays messages to him) that he should stay on his medication (a vasodilator and a beta-blocker for his high blood pressure), take Tylenol and use hot washrags on the area on his neck if it causes pain or discomfort, and avoid doing strenuous exercise or heavy lifting. Seahorn has not actually examined the area on the plaintiff's neck since April 2012.

At the examination in April 2012, Seahorn asked the plaintiff if he was having headaches or dizziness. The plaintiff told him he had both, and that the area hurt all the time, and nothing seemed to help. Seahorn told the plaintiff to "keep an eye" on the knot. (ECF No. 1, at 15.) Since then, the plaintiff has been experiencing pain radiating from the knot into his head, constant dizziness and severe headaches on a daily basis, as well as a feeling of pressure in his head, and a "strangled" feeling, particularly at night. (*Id.* at 19.) The plaintiff also states that he has been examined by various staff nurses who have all expressed their concern about the plaintiff's condition and referred him to be seen by Seahorn, but the plaintiff still has not been examined or treated by Seahorn since April 2012, or by an actual medical doctor. Seahorn has even responded on at least two recent occasions to the nurses' referrals, sending the plaintiff messages that he would see him the next day or by the end of the week, but he has not followed through.

The plaintiff alleges that Seahorn has known about the plaintiff's symptoms for the past year and has chosen not to take any action to address or treat his serious medical condition by making the necessary referral that would permit the plaintiff to be seen by a vascular specialist or even by a medical doctor. The plaintiff is now convinced that his carotid artery is almost completed blocked by the knot on his neck, and that he may now be on the verge of heart failure "due to the continuous strain being put on his heart." (ECF No. 1, at 21.) He also alleges that his blood pressure, even while he is on medication, is typically well above 140 over 90 (or well over normal). The plaintiff also alleges that his blood pressure is not regularly checked, because Seahorn never placed an order for it to be checked regularly, even though the plaintiff is on medication for high blood pressure. Instead, the plaintiff's blood pressure is checked once a month along with everyone else's, as a matter of standard protocol, and it is either high or dangerously high each time it is checked. On one day in February 2013, it was at 190 over 116. The nurse who checked it put him on a list to see Seahorn the next day, but Seahorn still did not examine the plaintiff.

For relief, the plaintiff seeks an injunction requiring the medical officials as DSNF to allow the plaintiff to be evaluated and treated by appropriate medical personnel. The plaintiff does not expressly seek monetary damages, but "reserve[s] the right to amend [his] complaint to seek damages according to how extensive his injuries are and to name additional defendants that may become known." (ECF No. 1, at 27.)

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any portion of a civil complaint filed *in forma pauperis* that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A(a) similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## III. LEGAL ANALYSIS

To state a claim under § 1983, a plaintiff must "identify a right secured by the United States Constitution and deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *West v. Atkins*, 487 U.S. 42, 48 (1988). Claims against

-3-

entities or individuals who are not state actors and "persons" subject to suit under § 1983 must be dismissed. Claims that do not state a deprivation of a right secured by the Constitution or federal law must likewise be dismissed.

As an initial matter, the Court finds that defendant Seahorn, who has the responsibility to provide medical care to inmates at DSNF, qualifies as a state actor for purposes of § 1983, regardless of whether he is employed directly by the state, or by an entity in contract with the state to provide healthcare to inmates at DSNF. *See West v. Atkins*, 487 U.S. 42, 55–56 (1988) (holding that private medical contractors such as those employed or contracted by an independent entity to provide medical care to prisoners are state actors for purposes of § 1983).

Under the Eighth Amendment, prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A deliberate-indifference claim has both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Comstock*, 273 F.2d at 702 (citing *Farmer*, 511 U.S. at 834). "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004)). Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and than he then disregarded the risk." *Id.* Further, however, not "every malpractice claim involving a prisoner [is] automatically transformed into a cause of action under the civil right statutes." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). Where "the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* at 860 n.5. Basically, there must be a knowing failure or refusal to provide urgently needed medical care which causes a residual injury that could have been prevented with timely attention. The Court must consider the wide discretion allowed prison officials in their treatment of prisoners under authorized medical procedures. *Id.* at 860.

In the present case, the plaintiff alleges that he has a knot in his neck that he believes is blocking or

-4-

partially blocking a major artery, that he is on medication for high blood pressure but the medication is not adequately addressing his symptoms, and that he has not seen any healthcare practitioner other than nurses in over a year, despite repeated requests both by himself and the nurses. The plaintiff alleges that his condition is serious. Construing the complaint in the light most favorable to the plaintiff, the Court concludes that, at this stage in the proceedings, the allegation of injury creates a question of fact as to whether the injury is sufficiently serious to implicate the plaintiff's constitutional right to care. The plaintiff's allegations also create a question of fact as to whether defendant Seahorn subjectively perceived and has recklessly disregarded the plaintiff's and various nurses' requests for treatment and requests for referral to a medical doctor for evaluation. In particular, the plaintiff's allegations are sufficient to state a deliberate-indifference claim based on an ongoing failure or refusal to provide care for what appears to be a serious condition. If the plaintiff were merely complaining about a past failure to provide adequate medical care, his allegations in all likelihood would simply amount to a malpractice claim rather than a claim of a constitutional dimension. Under the circumstances presented here, the Court finds that the complaint states a colorable claim against Seahorn in his individual capacity under § 1983 for deprivation of the plaintiff's right under the Eighth Amendment to reasonably necessary medical care. That claim will be permitted to proceed.

However, insofar as the plaintiff intends to state an official-capacity claim against Seahorn, such a claim is equivalent to a claim against the entity that employs Seahorn. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978); *see Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("While personal-capacity suits seek to impose liability upon a government official for actions he takes under color of state law, individuals sued in their official capacities stand in the shoes of the entity they represent." (internal alterations, quotation marks and citations omitted)). In the present case, it is unclear who Seahorn's employer is; the Court presumes that it is either the state or a private entity in contract with the state.

Setting aside the Eleventh-Amendment immunity issues that arise if Seahorn's employer is the state, the law is clear that an employer cannot be held responsible under 42 U.S.C. § 1983 for an alleged constitutional deprivation unless there is a direct causal link between a policy or custom of the entity and the alleged constitutional violation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis*

*Police Dep't*, 8 F.3d 358, 363–64 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001).

The plaintiff's allegations in this case suggest only that Seahorn, individually, has deliberately opted not to examine or treat the plaintiff. The allegations do not give rise to a reasonable inference that Seahorn's employer has adopted a policy or procedure of delaying or denying medical care to the point of deliberate indifference to the serious medical needs of inmates. The Court therefore finds, for purposes of the initial review, that the plaintiff has not alleged facts that state a colorable claim against defendant Seahorn in his official capacity. The official-capacity claim will therefore be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim for which relief may be granted.

An appropriate order is filed herewith.

*[signature: Todd Campbell]*

Todd Campbell
United States District Judge

-6-

Case 3:13-cv-00220   Document 7   Filed 03/27/13   Page 6 of 6 PageID #: 58