IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JAMES KIMBROUGH, | ) | |
| | ) | |
| v. | ) | No. 3:13-0220 |
| | ) | Judge Campbell/Bryant |
| DAVID SEAHORN, et al. | ) | |
| | ) | |

To: The Honorable Todd Campbell, District Judge

## REPORT AND RECOMMENDATION

This matter is on referral to the undersigned for, inter alia, pretrial management of this case, including recommendation for ruling on any dispositive motions. (Docket Entry No. 8) Currently pending is a motion for summary judgment by defendant David Seahorn, MS-PAC ("Mr. Seahorn") (Docket Entry No. 63) and a motion for summary judgment by defendant Madubueze Nwozo, M.D. ("Dr. Nwozo"). (Docket Entry No. 68) For the reasons stated below, the Magistrate Judge recommends that defendants' motions for summary judgment be GRANTED.

## Statement of the Case

The plaintiff, proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that defendants Mr. Seahorn and Dr. Nwozo have violated his Eighth Amendment right by their deliberate indifference to his serious medical needs while confined as a prisoner at the Lois M. DeBerry Special Needs Facility ("DSNF") in Nashville, Tennessee. (Docket Entry No. 1, 13) Plaintiff alleges he has a mass or "knot" in the deep tissue on the right side of his neck that "appears to be rid[ing] or connected to his carotid artery." (Docket Entry No. 1 at 10) The plaintiff admits that the knot has been there for approximately ten years, but he claims that it began affecting his cardiovascular health over the

1

past couple years.  Id.  The plaintiff is convinced that his carotid artery is now almost completely blocked by the knot on his neck, and that he may be on the verge of heart failure "due to the continuous strain being put on his heart."  Id. at 21.  He claims that he has made numerous complaints about the mass to healthcare officials at DSNF.  Id. at 16.  He also alleges that his blood pressure, even while he is on medication, is never under 140 over 90, but he has never been placed on an order for it to be checked regularly.  Id. at 21.  Instead, the plaintiff's blood pressure is checked monthly as a matter of standard protocol at the prison.  Id.

Mr. Seahorn is the physician's assistant at the prison and plaintiff alleges that he is "the healthcare official who is ultimately responsible for the plaintiff's general healthcare concerns."  Id. at 11.  The plaintiff alleges that he has been confined at DSNF for the past year and has requested to be evaluated by a medical doctor dozens of times, but that Mr. Seahorn has refused to refer him for examination or treatment by a medical doctor.  Id. at 13.  Instead, Mr. Seahorn has frequently told the plaintiff that he should take his medications and avoid doing strenuous exercise or heavy lifting.  Id. at 13-14.

Plaintiff claims he told Mr. Seahorn in an April 2012 examination that he was having headaches and dizziness and that the area on his neck hurt all the time.  Id. at 15.  Plaintiff alleges Mr. Seahorn told him to "keep an eye" on the knot.  Since then, the plaintiff claims he has been experiencing pain radiating from the knot into his head, constant dizziness and severe headaches on a daily basis, a feeling of pressure in his head, and a "strangled" feeling.  Id. at 15-16.  The plaintiff also states that he has been examined by various staff nurses who have all expressed their concern about his condition and referred him to be seen by Mr. Seahorn, but Mr. Seahorn consistently chose not to see him.  Id. at 17.

The plaintiff filed an inmate grievance with DSNF on February 19, 2013, but he claims he never received a response. Id. at 26. The plaintiff, proceeding *pro se* and *in forma pauperis*, filed a complaint with this Court against Mr. Seahorn on March 12, 2013. (Docket Entry No. 1) Mr. Seahorn, who claims he was unaware that the plaintiff had a mass or lump on his neck until he received the complaint, subsequently referred the plaintiff to Dr. Nwozo. (Docket Entry No. 65 at 3)

Dr. Nwozo evaluated the plaintiff on April 15, 2013. He noticed a "small rubbery knot on the right anterior neck, non-tender." (Docket Entry No. 50 at 3) The rest of the examination was normal. His assessment was "small lipoma, right neck." He prescribed Tylenol for plaintiff's headaches. Id. On April 22, 2013, plaintiff filed a motion to amend his complaint in order to add Dr. Nwozo as a defendant. (Docket Entry No. 13)

Dr. Nwozo had a follow-up visit with plaintiff on May 7, 2013. (Docket Entry No. 69 at 3-4) At this visit, Dr. Nwozo assessed the lump as a "questionable lipoma" and referred the plaintiff for an ENT surgery consult with Mark Williams M.D. ("Dr. Williams"). Dr. Nwozo also claims he recommended an x-ray of the soft tissue of the neck, but the plaintiff declined to have the x-ray done. Id. Plaintiff denies declining the x-ray. (Docket Entry No. 74 at 5) Regardless, a CT scan was done on June 17, 2013. Id. at 15. There were no neck masses or significant adenopathy noted, but Dr. Williams recommended further evaluation of the mandibular area. Id.

Mr. Seahorn submitted a motion for summary judgment on November 5, 2013 (Docket Entry No. 63) and Dr. Nwozo submitted a motion for summary judgment on December 2, 2013. (Docket Entry No. 68) The defendants have both alleged that summary judgment is appropriate because 1) the plaintiff has not suffered a sufficiently serious medical need the denial

of which could constitute an Eighth Amendment violation, and (2) the defendants have not acted with deliberate indifference regarding the plaintiff's medical conditions. The plaintiff responded to both of the motions for summary judgment requesting that they be denied. (Docket Entry Nos. 67, 74)

## Legal Analysis

(1) Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In determining whether the movant has met its burden, the court must view the evidence in the light most favorable to the nonmoving party. Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014). The nonmoving party's burden of providing specific facts demonstrating the existence of a genuine issue of material fact for trial is triggered after the moving party shows an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2554 (1986). Conclusory allegations that are not supported by specific evidence are insufficient to establish a genuine issue of material fact. Lujan v. Nat'l Wildlife Fed'n, 110 S. Ct. 3177, 3188 (1990). "Where the moving party has carried its burden…, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts….Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

(2) Legal Standard to Recover under 42 U.S.C. § 1983

A prisoner's right to be free from cruel and unusual punishment is violated if a prison doctor or official is deliberately indifferent to the prisoner's serious medical needs.[1] Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001). The Supreme Court has explained that deliberate indifference to a prisoner's serious medical needs constitutes the unnecessary and wanton infliction of pain prohibited by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Deliberate indifference entails more than mere negligence, but "is satisfied by something less than acts or omission for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Basically, there must be a knowing failure or refusal to provide urgently needed medical care which exposes the prisoner to "undue suffering or the threat of a tangible residual injury." Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir. 1976). The courts must consider the discretion provided to prison officials in their treatment of prisoners under authorized medical procedures. Id. A delay or even a denial of medical treatment for a nonserious, superficial physical condition does not amount to a constitutional violation. Blackmore v. Kalamazoo County, 390 F.3d 890, 897 (6th Cir. 2004).

There is an objective and a subjective component to a deliberate indifference claim. Farmer, 511 U.S. at 834. The objective component requires the existence of a sufficiently serious medical need. Id. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Harrison v. Ash, 539 F. 3d 510, 518 (6th Cir. 2008). The subjective component requires that the defendant have a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. In other words, a plaintiff must show that the prison official

---

[1] As the defendant himself has done, the Magistrate Judge is assuming without deciding that Dr. Nwozo was "acting under the color of state law" when he treated the plaintiff as is required for a plaintiff to state a claim under 42 U.S.C. § 1983. See Russo v. City of Cincinnati, 953 F.2d 1036 (6th Cir. 1992).

5

"subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." Dominguez v. Corrections Med. Servs., 555 F.3d 543, 550 (6th Cir. 2009) (quoting Comstock, 273 F.3d at 703).

In support of his motion for summary judgment, Mr. Seahorn submitted a chronological summary of care based on the TDOC medical records. (Docket Entry No. 65 at 5-10) The summary details multiple visits plaintiff had with healthcare professionals, including those with the defendants. The summary indicates that the plaintiff was receiving regular medical treatment. See Id. The plaintiff has objected to the summary as "rank hearsay," but has not indicated that any specific parts of the summary are false. (Docket Entry No. 67 at 9)

Although plaintiff insists that he is suffering from a serious and life-threatening medical condition (Docket Entry No. 1 at 19-20), he has not offered any competent evidence to establish a triable issue on this claim. The plaintiff has not presented a single statement by any of the health care providers involved in his care indicating that his medical condition is serious or life-threatening. Further, the plaintiff had the knot on his neck before he was incarcerated at DSNF under the care of Mr. Seahorn (Docket Entry No. 1 at 13) and has been living with the knot for the past ten years. (Docket Entry No. 1 at 10)

The plaintiff admits he was evaluated by an ENT surgeon, Dr. Williams, at Dr. Nwozo's request. (Docket Entry No. 74 at 2) Dr. Williams ordered a CT scan and indicated that there were no significant neck masses or adenopathy noted. Id. at 15. Although Dr. Williams indicated that additional observation would be "helpful," there is no indication that the knot on his neck was considered serious or life-threatening, or mandated treatment which defendants denied to plaintiff. Id.

In the absence of any competent evidence that the knot on plaintiff's neck was or should have been regarded by anyone but himself as requiring heightened medical attention, the undersigned finds that plaintiff has failed to establish the objective component requiring the existence of a serious medical need, and the subjective component requiring a showing that defendants "subjectively perceived facts from which to infer substantial risk to the prisoner." Dominguez, 555 F.3d at 350. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and constitutionalize claims which sound in state tort law." Westlake 537 F.2d at 860 n.5. For these reasons, the undersigned Magistrate Judge concludes that there is no genuine issue of material fact for trial and that defendants are entitled to judgment as a matter of law on plaintiff's claims of deliberate indifference to serious medical needs under §1983.

**Recommendation**

For the reasons stated above, the Magistrate Judge recommends that the defendant David Seahorn's motion for summary judgment be GRANTED and that defendant Madubueze Nwozo's motion for summary judgment be GRANTED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed to this Report in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

**ENTERED** this 24th day of June, 2014.

                                                s/ John S. Bryant
                                                JOHN S. BRYANT
                                                UNITED STATES MAGISTRATE JUDGE